UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MARY LAWRENCE,                        )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )   Civil Case No. 23-469 (RJL)
                                      )
RENAISSANCE HOTEL                     )
OPERATING CO., et al.,                )
                                      )
        Defendants.                   )

## MEMORANDUM OPINION
March _13_ 2024 [Dkt. #13]

Plaintiff Mary Lawrence brings this action against Renaissance Hotel Operating Co. and Marriott International, Inc. (together, "defendants"), seeking damages stemming from her alleged sexual assault at defendants' hotel. Among other claims, plaintiff alleges that defendants negligently spoliated evidence she would have used to pursue a lawsuit against her assailant, including such evidence as soiled bedsheets and towels, trash, and possible drugs or drug residue from the assailant's hotel room. Defendants have moved to dismiss plaintiff's spoliation claim on two narrow grounds, first insisting that D.C. law does not recognize a cause of action for first-party spoliation, and next arguing that plaintiff cannot state a claim for third-party spoliation, since she has no existing suit against her assailant. Notably, defendants do not cite any of the other elements of a third-party spoliation claim, much less suggest that plaintiff's allegations are insufficient to meet them. Because their two stated reasons for dismissal lack merit, and because defendants do not move to dismiss plaintiff's spoliation claim on any other basis, I will **DENY** defendants' motion.

## BACKGROUND

**I.   Factual Background**

The following facts are drawn from plaintiff's amended complaint and accepted as true for purposes of resolving defendants' motion to dismiss. *See* Am. Compl. [Dkt. #8]; *see, e.g., Kareem v. Haspel,* 986 F.3d 859, 865 (D.C. Cir. 2021).

In February 2020, plaintiff Mary Lawrence was a guest at the Renaissance Washington, D.C. Downtown Hotel ("Renaissance Hotel"), which defendants owned, operated, or managed at the time. Am. Compl. ¶ 1. She checked in on Monday, February 3, to attend an annual trade association conference hosted at the Renaissance Hotel and scheduled to begin on Tuesday morning. *Id.* ¶ 9. The evening of her Monday arrival, plaintiff visited the hotel lobby bar, where she encountered a man she did not previously know. *Id.* ¶ 10. Over the next four-and-a-half hours, plaintiff was served and consumed "an excessive amount of wine." *Id.* ¶ 16. She eventually left the bar, around 11:10 PM, with the man she had met earlier that night; the pair were captured on hotel surveillance video in which plaintiff is shown "visibly unsteady on her feet," with "difficulty walking and standing." *Id.* ¶ 10. A short time later, plaintiff was taken to the man's hotel room, where she was sexually assaulted and beaten. *Id.* ¶¶ 11, 21.

In the early hours of Tuesday, February 4, plaintiff left her assailant's room, completely naked and still severely disoriented—a condition plaintiff now attributes to having been drugged, since she was served her last drink at the lobby bar over six hours earlier. *Id.* ¶¶ 11, 16. Around 4:45 AM, a hotel employee received a phone call from a room on the second floor that was neither plaintiff's nor the assailant's; on the other end

2

was "a woman mumbling her words and acting weird." *Id.* ¶ 12 (quoting hotel records). Sent to investigate, security personnel found plaintiff in the second-floor hallway, still naked. *Id.* ¶ 13. She carried no belongings or identification and had "visible injuries to her face, including a black eye and a laceration so severe that it ripped off a mole on [her] face." *Id.* ¶ 14. Hotel staff retrieved a bathrobe and escorted plaintiff to the lobby, where she was again captured on surveillance visibly incapacitated and unsteady on her feet. *Id.* ¶ 17. Just after 5:00 AM, plaintiff was led back to her hotel room. *Id.* Hours later, a Renaissance Hotel employee knocked on plaintiff's door to conduct a "well-check" on her condition. *Id.* ¶ 20. At no point between plaintiff's summoning help, returning to her room, or having the "well-check" performed did any member of the hotel staff notify the police or other authorities; request or provide medical assistance; investigate plaintiff's room, the assailant's room, or the room from which plaintiff made her distress call; or take photographs of plaintiff's injuries. *Id.* ¶¶ 13–19.

Plaintiff left the Renaissance Hotel at 12:30 PM that same day, having attended none of the conference and "still unsure of what happened to her." *Id.* ¶ 20. She remained disoriented and physically ill throughout the afternoon, including at the airport while waiting for a flight back to Austin, Texas. *Id.* When plaintiff awoke in her own home on Wednesday, February 5, she came to realize "that she had been drugged, beaten, and sexually assaulted." *Id.* ¶ 21. She called the SAFE Alliance Rape Crisis Hotline and met with SAFE advocates and nurses the following day. *Id.* On Friday, February 7, plaintiff contacted the Renaissance Hotel "in an effort to understand what happened to her." *Id.* ¶ 22. Hotel staff reported some of the details of the events of February 4 and 5, but refused

3

to share surveillance footage or security reports. *Id.* The next week, on February 12, plaintiff reported her assault to the D.C. Metropolitan Police Department, and eventually obtained a protective order prohibiting her assailant from any contact with her. *Id.* ¶¶ 22–23. However, "[d]espite protracted legal efforts to hold her assailant criminally accountable," the assailant "was not prosecuted due to a lack of evidence, including evidence of assault-facilitating drugs." *Id.* ¶ 24. Likewise, plaintiff's pursuit of civil assault and battery claims was also "severely hampered due to lack of evidence" against her assailant. *Id.* Such evidence would have included not only physical evidence from the assailant's room (e.g., "drugs, drug residues, [and] soiled sheets and towels"), but also toxicological evidence from plaintiff's own person, which law enforcement or medical providers would have collected had they been timely summoned. *Id.* ¶¶ 34–36.

## II.   Procedural History

In December 2022, plaintiff filed her initial complaint against defendants in D.C. Superior Court. In February the following year, defendants removed the case to this Court, invoking its diversity jurisdiction under 28 U.S.C. § 1332(a). *See* Notice of Removal [Dkt. #1]; *see also* 28 U.S.C. § 1441(a)–(b).

Plaintiff's initial complaint raised four claims, all stemming from her alleged sexual assault at defendants' hotel: negligence and gross negligence (Count I), negligent spoliation of evidence (Count II), negligent infliction of emotional distress (Count III), and negligence per se (Count IV). On March 15, 2023, defendants moved to dismiss only Count II of plaintiff's complaint and filed answers to the complaint's remaining charges. Two weeks later, plaintiff amended her complaint consistent with Federal Rule of Civil

4

Procedure 15(a)(1)(B), raising the same four claims while supplementing her factual allegations. *See, e.g.*, Am. Compl. ¶¶ 24, 38. The Court denied defendants' first motion to dismiss as moot in light of the amended complaint.

On May 11, 2023, defendants filed their second motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), again seeking dismissal only of Count II—plaintiff's claim for negligent spoliation of evidence. *See* Mot. Dismiss [Dkt. #13] ("Mot."); Am. Compl. ¶¶ 29–38 (Count II). Defendants' motion to dismiss is fully briefed and ripe for decision. *See* Opp'n to Mot. Dismiss [Dkt. #17]; Reply Supp. Mot. Dismiss [Dkt. #18] ("Reply").

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint where the plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–758 (2014) (internal quotation marks omitted). A claim is facially plausible where the plaintiff pleads facts that are more than "'merely consistent with' a defendant's liability" and "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). In resolving a motion to dismiss under Rule 12(b)(6), the court must accept as true all well-pleaded allegations and draw all reasonable inferences in the plaintiff's favor. *See Fed. Trade Comm'n v. Endo Pharms. Inc.*, 82 F.4th 1196, 1203 (D.C. Cir. 2023).

## DISCUSSION

Defendants make two—and only two—arguments for why plaintiff's negligent spoliation of evidence claim must be dismissed under Rule 12(b)(6). They first posit that plaintiff's claim is actually one for first-party spoliation, which is not an independent tort under D.C. law, instead of third-party spoliation, which is. Alternatively, defendants insist that even if Count II is properly viewed as a third-party spoliation claim, plaintiff has not satisfied the first element of that claim: She cannot "prove an existing underlying civil [suit]" against her assailant in which the purportedly spoliated evidence would have been used. Mot. 7. As explained below, neither of these theories passes muster.

### I. Plaintiff's Count II asserts a claim for third-party spoliation.

I begin with defendants' argument that plaintiff's claim for negligent spoliation of evidence is really a first-party claim, not a third-party claim, and cannot be sustained under D.C. law.[1] The D.C. courts have made it "abundantly clear" that "negligent or reckless spoliation of evidence is a claim that can be brought *only* against a third party." *Cook v. Children's Nat'l Med. Ctr.*, 810 F. Supp. 2d 151, 157 (D.D.C. 2011) (citing *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846, 849 (D.C. 1998)). This is because "a remedy already exists for first-party spoliation—an instruction to the jury in the underlying action permitting it to draw an adverse inference against the spoliator." *Id.* Put differently, "[w]hen a defendant is alleged to have ... destroyed evidence needed by a plaintiff for a

---

[1] The parties agree, and the Court concurs, that this diversity action is governed by the substantive tort law of the District of Columbia. *See Metz v. BAE Sys. Tech. Sols. & Servs. Inc.*, 774 F.3d 18, 21 (D.C. Cir. 2014).

6

potential civil suit against another, and that same defendant is also alleged to have committed the underlying tort giving rise to that potential civil suit—a first-party spoliator situation—'a factfinder may be permitted to draw an adverse inference'" against the defendant from his failure to preserve the evidence. *Id.* (quoting *Holmes*, 710 A.2d at 848). But in a third-party spoliator situation, "where the spoliator [would not be] ... a party to the underlying lawsuit," no such remedy is available. *Holmes*, 710 A.2d at 848. That is why D.C.'s highest court, in the seminal *Holmes* case, chose to recognize an independent tort for third-party spoliation: It is "the only means to deter the negligent destruction of evidence" by an independent, disinterested actor "and to compensate the aggrieved party for its destruction." *Id.* at 849 (internal quotation marks omitted).

In this case, no party disputes the foregoing statement of the law. Their disagreement, rather, is whether we have on our hands a first-party spoliator situation, as defendants insist, or a third-party spoliator situation, as plaintiff counters.

I agree with plaintiff. A third-party spoliation claim arises when the defendant is alleged to have destroyed evidence relevant to the plaintiff's claims against another tortfeasor, but is "not alleged to have committed the underlying tort as to which the lost or destroyed evidence relate[s]." *Cook*, 810 F. Supp. 2d at 158 (internal quotation marks omitted); *accord Svistina v. Elbadramany*, 2022 WL 4366631, at *3 (S.D. Fla. Sept. 21, 2022) ("[T]hird-party spoliation claims arise when a person or an entity, though not a party to the underlying action causing the plaintiff's injuries or damages, destroyed evidence critical to that action." (cleaned up)). In other words, a third-party spoliator "is not a party to the underlying lawsuit." *Holmes*, 710 A.2d at 848. Instead, he "must be a stranger to"

7

the plaintiff's action against the other defendant and not himself implicated by the evidence he purportedly spoliated. *Cook*, 810 F. Supp. 2d at 159; *see Svistina*, 2022 WL 4366631, at *3. Here, the "underlying lawsuit" plaintiff alleges she would have brought, if not for defendants' spoliation, is a civil suit against her assailant; the "underlying tort[s]" are assault and battery. Defendants are not alleged to have committed these torts, and they would not have been a part of any suit against the assailant for his personal act of sexual assault. That seems to end this straightforward inquiry. *Cf. Cook*, 810 F. Supp. 2d at 159 (finding first-party, not third-party, spoliation where "the alleged spoliator, [would] be one of the defendants in [plaintiff's] underlying medical malpractice action").

Defendants nevertheless contend that, because much of the evidence they allegedly spoliated is also "relate[d]" to plaintiff's underlying claims against *them*, they should be considered first-party spoliators even if they would not be a party to plaintiff's suit against her assailant. *Id.* Defendants' premise is faulty, though.[2] None of the spoliated evidence plaintiff would have used to hold her assailant accountable—including physical evidence from the assailant's room and bodily evidence from plaintiff's person, which might have

---

[2] Faulty factual premise aside, I also have reason to doubt defendants' blanket legal assertion that third-party spoliators cannot be parties to any lawsuit alleging claims to which the spoliated evidence merely "relates." At its most expansive, that phrasing could preclude third-party spoliation claims in situations involving even a tenuous relationship between the spoliated evidence and other tort claims against the spoliator—even if the same evidence is equally if not more "related" to the plaintiff's claims against a different defendant in a different lawsuit, in which no remedy for spoliation is available.

I find defendants' position inconsistent with the whole point of recognizing an independent tort for third-party spoliation, which is to offer a remedy "to those whose expectancy of recovery has been eliminated" when "the already recognized remedy of permitting an adverse inference against the spoliator would serve no purpose." *Holmes*, 710 A.2d at 849. Even so, the Court need not decide if defendants' view of the law is correct at the margins, since defendants have not adequately explained how the spoliated evidence in this case "relates" to plaintiff's claims against defendants, none of which turn on the same proof that plaintiff alleges she would have used against her assailant.

8

established the use of assault-facilitating drugs—is relevant to proving plaintiff's claims in this case. Indeed, apart from conclusory statements otherwise, *see* Reply 2–3, defendants do not explain how plaintiff's pursuit of those claims would be hampered by a lack of such evidence. Plaintiff would not, for example, need soiled bedsheets or towels to establish that defendants breached their duty of care by "serving [plaintiff] an excessive amount of alcohol" or by "failing to refuse [her] service" while she was intoxicated. Am. Compl. ¶ 27. She would not need drugs or drug residue from the assailant's room to prove that defendants, as innkeepers, should have called for medical assistance, summoned law enforcement, or conducted any investigation at all into an incident—drug-related or not—that left one of their guests visibly injured and severely incapacitated. And she would not need a toxicology report to show that defendants' disinterested "care" of her while she was noticeably impaired, as alleged in the complaint, caused plaintiff emotional distress. In short, the evidence defendants allegedly spoliated would not make plaintiff's case against *defendants* (as opposed to her assailant) more or less easy to prove. It is "relate[d]" to her claims only to the extent that defendants are alleged to have negligently destroyed it, *accord* Reply 2—not because the evidence "primarily implicates" defendants themselves, *Svistina*, 2022 WL 4366631, at *3. That makes it a third-party spoliation situation.

**II.     Plaintiff has sufficiently pled the first element of a third-party spoliation tort.**

Defendants next contend that, even if plaintiff's claim is one for third-party (not first-party) spoliation, she "fails to adequately allege" the first element of that claim, which requires her to establish "an 'existing' underlying civil claim against [her assailant]." Mot. 7. Defendants misconstrue what this first element requires.

9

By way of background, the *Holmes* court enumerated seven total elements a plaintiff must prove to prevail on a claim for negligent spoliation:

> (1) existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to that action; (3) destruction of that evidence by the duty-bound defendant; (4) significant impairment in the ability to prove the potential civil action; (5) a proximate relationship between the impairment of the underlying suit and the unavailability of the destroyed evidence; (6) a significant possibility of success of the potential civil action if the evidence were available; and (7) damages adjusted for the estimated likelihood of success in the potential civil action.

*Holmes*, 710 A.2d at 854. Together, these elements approximate the four components of a basic tort claim: duty, breach, causation, and damages. "The second and third elements of the spoliation tort establish the duty and breach." *Channey v. Marriott Int'l, Inc.*, 2021 WL 4935544, at *4 (D.D.C. July 21, 2021), *R. & R. adopted by Channey v. Marriott Int'l, Inc.*, 2021 WL 5755154 (D.D.C. Dec. 3, 2021). "The first, fourth, fifth, and sixth elements … collectively establish causation." *Id.* And "[t]he seventh element provides a means to calculate damages that reflect the degree of impairment that the spoliation caused." *Id.*

Defendants challenge only the first element here.[3] They argue that plaintiff has not

---

[3] Parts of defendants' motion seem to allude to the fourth and fifth elements as well. As defendants develop no legal argument and offer no authority to support these passing allusions, I find them insufficient to preserve an argument that plaintiff failed to meet these other elements of the spoliation tort, in addition to the first. *See Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005); *Palateria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 247 F. Supp. 3d 76, 101 (D.D.C. 2017). Even assuming otherwise, however, plaintiff's allegations raise an amply reasonable inference that defendants' spoliation significantly and proximately impaired plaintiff's ability to hold her assailant accountable. According to plaintiff's complaint, the evidence that defendants negligently spoliated would have established not only that a sexual act occurred, but that the act involved the use of predatory drugs (and was therefore non-consensual). *See* Am. Compl. ¶¶ 15–16, 31, 35. No more is required, at this stage, to "link the alleged spoliation with at least 'some level of impairment'" in plaintiff's would-be suit against her assailant. *Channey*, 2021 WL 4935544, at *10 (quoting *Holmes*, 710 A.2d at 851).

shown "the existence of a potential civil action," *Holmes*, 710 A.2d at 854, because she "[n]ever file[d] a civil suit against [her assailant]" and cannot do so now because the limitations period for assault and battery claims has since expired, Mot. 7. But for one thing, it is "irrelevant" that the statute of limitations forecloses plaintiff's expectancy of recovery *today*. *Channey*, 2021 WL 4935544, at *5. Rather, the relevant question is whether plaintiff had a "protectable 'expectancy of recovery'" at the time of defendants' spoliation in February 2020. *Id.* (quoting *Holmes*, 710 A.2d at 849). Plaintiff pleads that she did have such an expectancy, Am. Compl. ¶ 38, which was reduced when, in the wake of her assault, defendants destroyed evidence she would have used to recover against her assailant, *id.* ¶¶ 35–37. Defendants—who do not suggest that a statute of limitations or other procedural bar prohibited plaintiff from suing her assailant at that time—fail to truly contest this.

"It is also irrelevant whether [plaintiff] actually brought ... a civil claim" against her assailant, even when she technically could have. *Channey*, 2021 WL 4935544, at *5. Indeed, while defendants make hay out of plaintiff's failure to pursue an underlying claim, a spoliation plaintiff need not "pursue futile lawsuits to completion" to establish the first element of the tort, *Holmes*, 710 A.3d at 851—which, after all, contemplates only the existence of a "*potential* civil action," not a preexisting one, *id.* at 853 (emphasis added). Here, where the spoliation is alleged to have sabotaged plaintiff's "potential civil action" against her assailant, *id.*; Am. Compl. ¶¶ 24, 37, requiring her to first "pursue and lose the underlying claim" before allowing suit against the spoliators would be "too harsh" of an outcome, *Holmes*, 710 A.3d at 851. All in all, plaintiff's would-be lawsuit against her

assailant—even if futile or now barred—fits comfortably "within the broad class of potential claims the *Holmes* court sought to protect." *Channey*, 2021 WL 4935544, at *5.

## CONCLUSION

As defendants offer no other argument with respect to the *Holmes* elements, and no reason otherwise for granting their motion to dismiss, the Court, too, will take it no further. Accordingly, for the foregoing reasons, defendants' motion to dismiss [Dkt. #13] is **DENIED**. An order consistent with this Memorandum Opinion will issue on this date.

                                                                                          *[signature]*
RICHARD J. LEON
United States District Judge