## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **MARY LAWRENCE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Civil Case No. 23-469 (RJL)** |
| | ) | |
| **RENAISSANCE HOTEL OPERATING** | ) | |
| **COMPANY, INC.,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### MEMORANDUM OPINION

(September 23, 2025) [Dkt. #61]

Plaintiff Mary Lawrence ("Lawrence") seeks to hold Defendants Renaissance Hotel Operating Company, Inc. and Marriott International, Inc. (collectively, "defendants") liable for various negligence claims stemming from overservice of alcohol at a hotel bar at the Renaissance Washington, DC Downtown Hotel in Washington, D.C. (the "Hotel") and an alleged sexual assault there by another hotel guest. Lawrence brought five claims: negligence and gross negligence (Count I), negligent spoliation of evidence (Count II), negligent infliction of emotional distress (Count III), negligence per se (Count IV), and punitive damages. Defendants seek summary judgment on all counts. For the reasons below, I will **GRANT IN PART** defendants' motion as to Counts I, II, III, and punitive damages and **DENY IN PART** defendants' motion as to Count IV.

## I.    PROCEDURAL BACKGROUND

In December 2022, plaintiff filed her initial complaint against defendants in D.C. Superior Court.  In February 2023, defendants invoked diversity jurisdiction under 28 U.S.C. § 1332(a) to remove the case to this Court.  *See* Notice of Removal [Dkt. #1]; *see also* 28 U.S.C. § 1441(a)–(b).  The operative complaint is plaintiff's amended complaint. *See* Am. Compl. [Dkt. #8].  On May 11, 2023, defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), seeking to dismiss only Count II—plaintiff's claim for negligent spoliation of evidence.  *See* Mot. to Dismiss [Dkt. #13].  On March 12, 2024, I denied defendants' motion.  Mem. Op. [Dkt. #59].  After multiple discovery disputes, discovery closed on April 15, 2024.  Defendants filed their motion for summary judgment on May 16, 2024 [Dkt. #61].  Both parties also filed motions to strike evidence at summary judgment, which I denied.  [Dkt. #73].

## II.    LEGAL BACKGROUND

In this diversity action, the tort law of the District of Columbia is controlling. *Beckwith v. Interstate Mgmt. Co.*, 82 F. Supp. 3d 255, 258 (D.D.C. 2015).  While all of plaintiff's claims sound in negligence, they are distinct as follows.

### A.    Negligence

"To establish a negligence claim in the District of Columbia, 'a plaintiff must demonstrate that: (1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff.'"  *Mancuso v. Chapel Valley Landscape Co.*, 318 A.3d 547, 553−54 (D.C. 2024) (quoting *KS Condo, LLC v. Fairfax Vill. Condo. VII*, 302 A.3d 503, 507 (D.C.

2

2023)); *see also Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 793 (D.C. 2011) (en banc). When seeking to establish a duty defendant owed to protect a plaintiff from a third party's criminal act, a plaintiff must satisfy specific burdens. First, a plaintiff "must prove that the criminal act was 'so foreseeable that it became [the defendant's] duty to guard against it" by following a *nationally recognized* standard of care. *Beckwith*, 82 F. Supp. 3d at 258 (quoting *Clement v. Peoples Drug Store, Inc.*, 634 A.2d 425, 427 (D.C. 1993)); *Casey v. McDonald's Corp.*, 880 F.3d 564, 569 (D.C. Cir. 2018).

Courts evaluate whether a duty protects another from a third-party's criminal act exists on a sliding scale, with the criminal act's foreseeability on one end, and with "the degree to which defendant owes a 'greater duty of protection' by nature of his relationship to the plaintiff" on the other end. *Beckwith*, 82 F. Supp. 3d at 258 (quoting *Bd. of Tr. of Univ. of D.C. v. DiSalvo*, 974 A.2d 868, 872 (D.C. 2009)). A greater duty of protection lightens a plaintiff's burden to show foreseeability, while the absence of that increased duty requires a plaintiff to "make a 'heightened' showing of the criminal act's foreseeability." *Id.* (quoting *DiSalvo*, 974 A.2d at 872). This Court has found that a hotel has a greater duty of protection for its guests. *See id.* at 259–60; *see also* Restatement (Second) of Torts § 314A(2). Therefore, a hotel guest need not make a heightened showing of foreseeability, but "still must make *some showing* that the [criminal act in question] was foreseeable." *Id.* at 260. Whether foreseeability is shown may be a factual question for a jury, rather than a legal question appropriate for summary judgment. *Doe v. De Amigos, LLC*, 2014 WL 12785495, at *2 (D.D.C. Jan. 23, 2014).

Further, expert testimony can be necessary to establish the standard of care in

3

negligence cases that involve "issues of safety, security and crime prevention." *Night &
Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. 2014) (quoting *Varner v. District
of Columbia*, 891 A.2d 260, 267 (D.C.2006)).  Expert testimony must show "[a] 'national
standard of care [that] describe[s] a specific standard' [and] has been 'accepted in the
industry.'"  *Casey*, 880 F.3d at 569 (quoting *Novak v. Cap. Mgmt. & Dev. Corp.*, 570
F.3d 305, 313 (D.C. Cir. 2009)).  Experts cannot simply provide their "own conclusory
opinion[s]" that an alleged standard is a national standard.  *Briggs v. Washington Metro.
Area Transit Auth.*, 481 F.3d 839, 847 (D.C. Cir. 2007) (quoting *Pannell v. District of
Columbia*, 829 A.2d 474, 479 (D.C. 2003)).  "[A]n expert may support a purported
standard by showing that it has been accepted as controlling in facilities and enterprises
that are similar to defendants' facilities or enterprises."  *Id.*

### B.    Negligence Per Se

Under D.C. law, a plaintiff may proceed on a negligence claim by "rely[ing] on a
statute or regulation as proof of the applicable standard of care."  *Night & Day Mgmt.,
LLC*, 101 A.3d at 1039 (quoting *Clark v. District of Columbia*, 708 A.2d 632, 636 (D.C.
1997)).  D.C. Code § 25–781 can set that standard of care such that violation of the
statute "constitutes negligence per se."  *Casey*, 880 F.3d at 567 (quoting *Rong Yao Zhou
v. Jennifer Mall Rest., Inc.*, 534 A.2d 1268, 1275 (D.C. 1987)).  In 2020, D.C. Code
§ 25–781 prohibited "the sale or delivery of alcoholic beverages to … "[a]n intoxicated
person, or any person who appears to be intoxicated."  D.C. Code § 25–781(a)(2).
Therefore, to recover on a negligence per se claim invoking D.C. Code § 25–781, a
plaintiff must show that "the sale or delivery of alcoholic beverages to an intoxicated

4

person, or any person who appears to be intoxicated" caused an injury plaintiff suffered.

Showing causation under D.C. tort law requires "show[ing] both but-for causation and

proximate cause." *Casey*, 880 F.3d at 567.

### C.    Negligent Spoliation of Evidence

"Negligent or reckless spoliation of evidence is an independent and actionable tort

in the District of Columbia." *Holmes v. Amerex Rent-A-Car*, 710 A.2d 846, 847 (D.C.

1998). The elements for such a claim are:

> (1) existence of a potential civil action; (2) a legal or contractual duty to
> preserve evidence which is relevant to that action; (3) destruction of that
> evidence by the duty-bound defendant; (4) significant impairment in the
> ability to prove the potential civil action; (5) a proximate relationship
> between the impairment of the underlying suit and the unavailability of the
> destroyed evidence; (6) a significant possibility of success of the potential
> civil action if the evidence were available; and (7) damages adjusted for the
> estimated likelihood of success in the potential civil action.

*Id.* at 854. The second element establishes the duty, and the third element establishes the

breach. The first, fourth, fifth, and sixth elements establish causation together. The

seventh element speaks to injury and its calculation. *See id.* "[A] careful balancing of

interests required by the unique features of this tort" should inform a court's analysis of

duty, breach, injury, and causation. *Channey v. Marriot International, Inc.*, 2021 WL

5755154, at *5 (quoting *Holmes*, 710 A.2d at 849).

### D.    Negligent Infliction of Emotional Distress

A plaintiff can recover on a claim for negligent infliction of emotional distress

("NIED") in two ways under D.C. law. A rule known as the "zone of danger" governs

the first path; it "permits recovery for mental distress if [a] defendant's actions caused the

plaintiff to be 'in a danger of physical injury' and if, as a result, the plaintiff 'feared for his own safety.'" *Hedgepeth v. Whitman Walker Clinic*, 22 A.3d 789, 796 (D.C. 2011) (quoting *Williams v. Baker*, 572 A.2d 1062, 1066 (D.C. 1990)). The special-relationship-or-undertaking rule governs the second path; it requires a plaintiff to demonstrate three things. First, that "the defendant has a relationship with the plaintiff, or has undertaken an obligation to the plaintiff, of a nature that necessarily implicates the plaintiff's emotional well-being." *Id.* at 810. Second, that "there is an especially likely risk that the defendant's negligence would cause serious emotional distress to the plaintiff." *Id.* And third, that "negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused serious emotional distress to the plaintiff." *Id.* at 811.

A court must first decide whether there is a special relationship or undertaking that creates "a duty to avoid inflicting emotional distress" as a question of law. *Id.* at 811. Next, a court evaluates whether a defendant has breached his duty "by reference to the specific terms of the undertaking agreed upon by the parties or, otherwise, by an objective standard of reasonableness applicable to the underlying relationship or undertaking." *Id.* Finally, "likelihood that the plaintiff would suffer serious emotional distress is measured against an objective standard: what a 'reasonable person' in the defendant's position would have foreseen under the circumstances in light of the nature of the relationship or undertaking." *Id.*

### E.    Punitive Damages

For Lawrence to recover punitive damages under D.C. law, she must "prove by clear-and-convincing evidence that the defendant's tortious acts were 'accompanied by

conduct and a state of mind evincing malice or its equivalent.'" *District of Columbia v. Bamidele*, 103 A.3d 516, 522 (D.C. 2014) (quoting *District of Columbia v. Jackson*, 810 A.2d 388, 396 (D.C. 2002)). Showing "malice or its equivalent" requires proving: "(1) 'the defendant acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of the plaintiff'; and (2) 'the defendant's conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff.'" *Id.* (quoting *Jackson*, 810 A.2d at 396).

## III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 dictates that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the movant bears the initial burden of identifying evidence showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant then carries the burden to "come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unless the non-movant can demonstrate a genuine issue of material fact, which involves "cast[ing] more than metaphysical doubt" regarding the evidence, the movant is entitled to judgment as a matter of law. *Doe v. Gates*, 981 F.2d 1316, 1323 (D.C. Cir. 1993). "[T]he determination whether a genuine dispute concerning a material fact exists is itself a question of law that must be decided by the court[;] [i]t does not depend upon what either or both of the parties may have thought about the matter." 10A *Wright & Miller's Federal Practice & Procedure* § 2720 (4th ed.

7

2008). But where the facts are disputed, the Court must make all justifiable inferences in favor of the non-movant, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), except where the non-movant's version of events is "blatantly contradicted by the record, so that no reasonable jury could believe it," *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## IV.    FINDINGS OF FACT

The Court considers the following facts as beyond dispute at summary judgment based on the record in this case, viewing the facts in the light most favorable to Lawrence as the non-movant. *See* Fed. R. Civ. Proc. 56; *Celotex Corp.*, 477 U.S. 317; *Anderson*, 477 U.S. 242 (1986); *Scott*, 550 U.S. 372.

On February 3, 2020, plaintiff Mary Lawrence, 57 years old, checked in to the Renaissance Washington, DC Downtown Hotel (the "Hotel") at 999 Ninth Street, NW, Washington D.C. Mem. in Supp. of Defs.' Mot. for Summ. J. ("Defs.' Br.") [Dkt. #61-2] at 3–4.[1] Lawrence had travelled from her home in Austin, Texas, to D.C. to attend a business conference at the Hotel and arrived around 6:30 pm. Defs.' Br. 4. Just before 7:00 pm, Lawrence went to the Hotel's lobby bar, Mixx, and ordered her first drink of the day, a glass of red wine. Defs.' Br. 4; Defs.' Resp. to Pl.'s Statement of Genuine Issues ("Defs.' Reply Br.") [Dkt. #67-1] at 2. She had last eaten during a layover in Atlanta and consumed no more food that night. Defs.' Br. 5. She ordered a second glass of red wine around 7:14 pm. Defs.' Br. 5. Lawrence then took her second glass of wine to attend a reception for the business conference. Defs.' Br. 5. Around 5 minutes later, Scott Lars

---

[1] Citations to "Defs.' Br." are to statements of fact that plaintiff does not dispute. Where there is any dispute (whether genuine or not), citations "Defs.' Reply Br." are to Defendant's Response to Plaintiff's Statement of Genuine Issues, which includes plaintiff's objections.

Petersen entered the Mixx bar and sat near where Lawrence had been sitting. Defs.' Br. 5. At 7:33 pm, Lawrence returned to the Mixx bar with a glass of wine in hand, shook hands with Petersen, and the two began speaking. Defs.' Br. 5.

Lawrence and Petersen remained at the bar until 11:10 pm. During that period, they conversed extensively, and toward the end of that time—well into Lawrence's consumption of seven more glasses of wine (making for a total of nine glasses in just over a four-hour time window)—they kissed. Defs.' Br. 6–7. Lawrence only recalls consuming 3 or 4 glasses of wine, and she admits having no evidence that Petersen drugged her. Defs.' Br. 7–8, 11. Video footage from the Hotel shows that Lawrence and Petersen left the bar together around 11:10 pm. Defs.' Br. 7. Video footage from another camera shows the two walked to the elevator lobby. *See* Defs.' Mot. for Summ. J., Exs. C-1 ("Bar Video"), C-2 ("Lobby Video") [Dkt. #61-5]. Lawrence is clearly swaying and is holding onto Petersen, and the two kiss again while waiting for the elevator. *See* Lobby Video. Defendants dispute any characterization of Lawrence's actions as reflecting her undeniable level of intoxication, but the Court does not need to entertain "visible fiction" when the video evidence clearly shows someone consume 9 glasses of wine in just over four hours and then adopt an ambulatory posture that can only be described as intoxicated. *Scott*, 550 U.S. at 381. Lawrence and Petersen then took the elevator to Petersen's room. Defs.' Br. 8. Lawrence has no memory of what occurred in Petersen's room, Defs.' Br. 11, but the parties agree that Lawrence did not perform any sexual acts on Petersen, and that, at a minimum, Petersen kissed Lawrence, touched her breasts, and performed oral sex on her, *see* Defs.' Reply Br. 14–15.

In the middle of the night, Lawrence left Petersen's room, and she left her clothes, room key, and other possessions behind. Defs.' Br. 8. The Hotel's front desk attendant (Kristye Carcamo) received a call around 4:45 am on February 4, and a Hotel security officer (Mohammed Savage) went to the second floor to investigate, where he found Lawrence naked in the hallway walking toward him. Defs.' Br. 8. Carcamo, Savage, and loss prevention officer William Angel escorted Lawrence to her room. Defs.' Br. 9. Later in the morning, Petersen called Lawrence's hotel room, and asked for her room number, which she provided him. Defs.' Br. 9. Petersen visited Lawrence's hotel room twice that morning, returning her clothes, shoes, and other belongings. Defs.' Br. 9. Lawrence opened the door and spoke with him. Defs.' Br. 9. Lawrence neither sought medical attention nor reported anything to the Hotel or police while in Washington, D.C. Defs.' Br. 10. Lawrence returned to Texas that day on February 4, and when she woke up the next day, on February 5, she believed that she had been raped at the Hotel. Defs.' Br. 11. Lawrence unsuccessfully pursued criminal charges against Petersen, and she never filed a civil suit against him. Defs.' Br. 10.

## V.    ANALYSIS

### A.    Negligence

Establishing duty is the first step in negligence claims. *See Mancuso*, 318 A.3d at 554; *Hedgepeth*, 22 A.3d at 793. Lawrence seeks to show that defendants had a duty to protect her from a third party's criminal act (that is, sexual assault by Petersen), so she "must prove that the criminal act was 'so foreseeable that it became [the defendant's] duty to guard against it'" by following a *nationally recognized* standard of care. *Beckwith*,

10

82 F. Supp. 3d at 258 (quoting *Clement*, 634 A.2d at 427); *Casey*, 880 F.3d at 569. Lawrence argues that defendants had duties: (1) not to overserve her at Mixx bar (or at least ensure her safety after overserving her); and (2) to get her medical help, involve law enforcement, and investigate any potential crimes upon finding her indecent and disoriented in the hallway. *See* Am. Compl. [Dkt. #8] ¶ 27. Lawrence argues that there is a national standard of care not to overserve intoxicated persons, which is taught in the Training for Intervention Procedures ("TIPS"), a nation-wide program required by defendants for their bartending personnel. Pl.'s Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") [Dkt. #64] at 7–8.[2] Further, Lawrence argues that defendants breached a standard of care of a reasonable person as well as a national standard of care in the hospitality industry to call emergency medical services and police in their response to finding her naked and disoriented in the hallway. Pl.'s Opp'n 11–18.

**Standard of Care.** Establishing the standard of care in negligence cases that involve "issues of safety, security and crime prevention" can require expert testimony. *Night & Day Mgmt., LLC v. Butler*, 101 A.3d 1033, 1039 (D.C. 2014) (quoting *Varner v. District of Columbia*, 891 A.2d 260, 267 (D.C.2006)). The District of Columbia Court of Appeals has determined that it falls within a trial judge's discretion whether to require expert testimony on "issues of 'safety, security and crime prevention,'" *Prasad v. George Washington Univ.*, 390 F. Supp. 3d 1, 37 (D.D.C. 2019) (quoting *Varner*, 891 A2d at 267), and Federal Rule of Evidence 702 likewise allows this Court to require expert

---

[2] Plaintiff's argument that D.C. Code § 25–781 establishes the requisite standard of care under a negligence per se theory is discussed in the analysis of plaintiff's negligence per se claim *infra*.

testimony "to establish the breach of duty . . . [and] to explain what that duty consists of and how [an] institution's judgment should reasonable have been exercised," *id.* at 38. It makes good sense to follow the District of Columbia and other decisions in this court to utilize expert testimony in this case because it squarely implicates issues of safety, security, and crime prevention. *See, e.g., Beckwith*, 82 F. Supp. 3d at 262–64 (relying on expert testimony in a case assessing hotel security); *Night & Day Mgmt., LLC*, 101 A.3d at 1039 (requiring expert testimony on issue of security arrangements as beyond the purview of the average juror).

To establish a national standard of care here, expert testimony must show "[a] 'national standard of care [that] describe[s] a *specific* standard' [and] has been 'accepted in the industry.'" *Casey*, 880 F.3d at 569 (emphasis added) (quoting *Novak v. Cap. Mgmt. and Dev. Corp.*, 570 F.3d 305, 313 (D.C. Cir. 2009)). Experts cannot simply provide their "own conclusory opinion[s]" that an alleged standard is a national standard. *Briggs v. Washington Metro. Area Transit Auth.*, 481 F.3d 839, 847 (D.C. Cir. 2007) (quoting *Pannell v. District of Columbia*, 829 A.2d 474, 479 (D.C. 2003)). "[A]n expert may support a purported standard by showing that it has been accepted as controlling in facilities and enterprises that are similar to defendants' facilities or enterprises." *Id.*

Lawrence fails to establish a national standard of care because she only offers "conclusory opinions," and does not provide the kind of *specific standard* required to survive summary judgment. *Briggs*, 481 F.3d at 847; *see Pannell v. District of Columbia*, 829 A.2d 474, 479–80 (D.C. 2003) (explaining that establishing a national standard of care requires showing specific standards, rather than general references).

12

Lawrence offers testimony from two experts: hotel security expert Craig Bruno and policing and investigations expert Doug Deaton. First, Lawrence's experts offer no evidence concerning any *specific* standard that defendants failed to meet concerning their response to finding plaintiff naked and disoriented in the hallway. Further, Bruno and Deaton's claims that medical and police services should have been called and that Lawrence "*could* have" suffered injury as a result of Hotel staff not calling those services are inapposite. Pl.'s Opp'n, Ex. K ("Bruno Dep.") [Dkt. #64-11] at 29; Pl.'s Opp'n, Ex. M ("Deaton Dep.") [Dkt. #64-13] at 6–8. The fact that Lawrence did not suffer an injury moots the need to determine if any duty existed or was breached. Still, Lawrence's evidence on both of these elements is clearly insufficient. Summary judgment shall be granted as to any negligence claim in Count I concerning the Hotel's response to finding Lawrence in the hallway.

Next, Lawrence likely does not establish a specific, national standard of care concerning the Hotel's duty to protect her from potential harm by not overserving her. That Lawrence consumed too much alcohol and became significantly intoxicated cannot be in question, but what *national* standard of care defendants breached by serving her nine glasses of wine in four hours is at issue. Aside from Lawrence's invocation of D.C. Code to set the standard of care, which is addressed *infra* as to her negligence per se claim, she claims that defendants breached a national standard of care because bartenders at Mixx Bar did not follow their TIPS training when they failed to track her level of intoxication and served her too much alcohol. TIPS is a program offered nationwide and defendants require their bartenders to take TIPS training. Pl.'s Opp'n, Ex. I ("Felix

Dep.") [Dkt. #64-9] at 8. But a defendant's policy is not proper evidence to prove a national standard of care. *Briggs*, 481 F.3d at 848. And Lawrence does not cite a *specific* standard regarding the service of alcohol that is accepted nationwide. Showing that people use TIPS training across the nation is not the same thing as proving that TIPS has set a specific standard that is nationally recognized. While it is, of course, reasonable to assume that hotel bars across the country may have a policy regarding not overserving patrons, assumptions do not defeat summary judgment. Further, that analysis is essentially a reasonable person standard, rather than an inquiry into the specific standard required here. In light of these shortcomings for Lawrence's negligence and gross negligence claims, summary judgment for defendants on Count I is appropriate.

### B.   Negligence Per Se

Lawrence's negligence per se claim points to D.C. Code § 25–781 as the standard of care, which at the time of the incident, prohibited "the sale or delivery of alcoholic beverages to . . . [a]n intoxicated person, or any person who appears to be intoxicated." D.C. Code § 25–781(a)(2). A violation of D.C. Code § 25–781 can "constitute[] negligence per se," *Casey*, 880 F.3d at 567 (quoting *Rong Yao Zhou*, 534 A.2d at 1275), so long as defendant's violation was the but-for and proximate cause of the plaintiff's injury, *id.* at 567–68 (citing *Convit v. Wilson*, 980 A.2d 1104, 1123 (D.C. 2009)).

Defendants argue for summary judgment on this claim on three grounds: (1) that "there is no evidence that [Lawrence] was intoxicated or appeared to be intoxicated when she was being served alcohol," Defs.' Br. 31–33; (2) that Lawrence was contributorily negligent and/or assumed the risk, Defs.' Br. 33–38; and (3) that Lawrence cannot show

14

proximate cause, Defs.' Br. 33; Defs.' Reply Br. 19–20. The first of these arguments is, frankly, preposterous, but all three fail.

Indeed, there is evidence that Lawrence was intoxicated and/or appeared to be intoxicated. The parties do not dispute that Lawrence had nine glasses of wine (nor can they, considering it is captured on video). Defs.' Br. 5–6. Bartender Mimi Tadasse testified that it is possible for a person who consumes nine glasses of wine to be intoxicated. Ex. L [Dkt. #64-12] at 21. Bartender Aaron Malofsky testified that ten glasses of wine for an individual would "a hundred percent" be excessive or too much. Ex. J [Dkt. #64-10] at 17. Lawrence testified that she had no memory of leaving the bar or after leaving the bar. Ex. O [Dkt. #64-15] at 14. Taking the facts in Lawrence's favor as the non-movant, there is clearly enough evidence to defeat summary judgment on this ground alone. Further, the video evidence provides further reason to deny summary judgment on the grounds of evidence that Lawrence appeared to be intoxicated.

Next, contributory negligence and assumption of risk are not defenses available to defendants. In 2000, in *Jarrett v. Woodward Brothers, Inc.*, the D.C. Court of Appeals explained that contributory negligence, as a common law defense, "is not available . . . to defeat liability for negligent conduct that contravenes a statutory mandate because '[s]tatutes and regulations should not be overborne by the common law.'" 751 A.2d 972, 985 (D.C. 2000) (quoting *Martin v. George Hyman Constr. Co.*, 395 A.2d 63, 68–69 (D.C. 1978). The statute at issue in that case was D.C. Code § 25–121(b), which in 1993—the period at issue in the case—prohibited "the holder of a retail license issued pursuant to this chapter [from] permit[ting] on the licensed premises the consumption of

alcoholic beverages ... by any person under the age of 21 years, by any intoxicated person, or any person of notoriously intemperate habits, or any person who appears to be intoxicated." *Id.* at 977 (quoting D.C. Code § 25–121(b) (1993)). The D.C. Court of Appeals stated in *Jarrett* that D.C. Code § 25–121(b) "has as its purpose not only the safety of the general public but also the health and safety of the patrons who frequent bars and restaurants that serve alcohol." 751 A.2d at 985. It therefore determined that "a patron's contributory negligence is not a bar to recovery for negligent violation of the statutory standard" in D.C. Code § 25–121(b). *Id.* The *Jarrett* decision was issued May 25, 2000. Three months earlier, D.C. Code Chapter 25 had been amended with the new Chapter to take effect May 3, 2000. In that amendment, the substance of § 25–121(b) was moved to the new § 25–781(b). This means that contributory negligence is not a defense to an unexplained violation of § 25–781(b), just as it was not to the law in its previous form as § 25–121(b). Therefore, contributory negligence is clearly not an available defense here.

The *Jarrett* Court also determined that assumption of risk was not available as a defense to § 25–121(b). 751 A.2d at 987. Assumption of risk bars a plaintiff from recovery not because of the plaintiff's fault, "but on a theory that the plaintiff has "consciously relieved the defendant of any duty which he otherwise owed the plaintiff." *Id.* at 986. Here because the duty is set by statute, D.C. Courts "scrutinize whether the plaintiff voluntarily consented to incur the risk from which the statute sought to protect him." *Id.* To make that case, defendants must prove:

(1) that there was available to the [plaintiff] an alternative to encountering

the risk; (2) that the [plaintiff's] choice between the risk and such alternative was fully voluntary; (3) that such alternative afforded the [plaintiff] the safety mandated by statute, rule or regulation; and (4) that the [plaintiff's] determination to encounter the risk was, under the circumstances, made with willful, wanton, or reckless disregard for his own safety.

*Id.* (citing *Martin*, 395 A.2d at 74). In *Jarrett*, where a bar served alcohol to an already-intoxicated minor, the D.C. Court of Appeals determined that the intoxicated individual could not "make a 'fully voluntary' choice to discontinue drinking" and that "there was no 'alternative' that afforded the same protection as the statutory mandate." *Id.* The *Jarrett* Court thus determined that at least two of the four elements to prove assumption of risk were missing. *Id.* Further, the Court determined that the doctrine would defeat "what the legislature intended to accomplish [with § 25–121(b)], which is precisely to impose an obligation on the liquor licensee, *independent of the wishes of the patron*, not to 'permit . . . consumption' of alcohol by those persons that the licensee knows, or should know, to be underage or intoxicated." *Id.* at 987 (quoting D.C. Code § 25–121(b) (1993)). Thus, the Court held that assumption of risk was not available as a defense to § 25–121(b) because "its necessary premise that a plaintiff ha[s] knowingly and voluntarily encountered a known risk is antithetical to the legislative policy determination that underage and intoxicated persons need to be protected from their choice when it comes to the consumption of alcohol, which is prohibited by the statute." *Id.*

Defendants also argue that the holding regarding assumption of risk in *Jarrett* applies only to minors, but this cannot be correct. *See* Defs.' Reply Br. 21. First, the *Jarrett* Court did not explicitly cabin its holding in this manner, nor has the D.C. Court of

Appeals limited that holding in subsequent cases.  Further, the *Jarrett* Court's analysis described *supra* concluding assumption of risk was inappropriate and inapplicable in that case applies with the exact same force here.  Indeed, defendants must prove the same four elements for assumption of risk regardless of a plaintiff's age.  Therefore, it only makes sense to conclude that two of those four elements cannot be met in Lawrence's case either—that is, no ability for the intoxicated individual "to make 'fully voluntary' choice to discontinue drinking" and "no 'alternative' that afforded the same protection as the statutory mandate."  *Jarrett*, 751 A.2d at 986.  Accordingly, defendants should not receive summary judgment for reason of assumption of risk.

Finally, defendants argue that Lawrence cannot show proximate causation.  Defs.' Reply. Br. 19–20.  The most factually analogous case involving an intervening sexual assault and a bar's liability is *Doe v. De Amigos, LLC*.  *See* 2014 WL 12785495 (D.D.C. Jan. 23, 2014).  At summary judgment, the *Doe* court noted that plaintiff in that case "pointed to little in the way of specific factual material—or any *evidence*—that would demonstrate that th[at] defendant was on actual notice that its breach of its legal responsibility to deny plaintiff alcohol would result in her succumbing to a criminal sexual assault."  *Id.* at *2.  Still, the court determined that "the plaintiff may well be able to establish that sexual activity without clear consent was one of the specific harms that D.C. Code § 25-781 was meant to prevent."  *Id.*  Therefore, the court denied summary judgment, determining that a jury needed to decide the issue on a full record.  *Id.*

The same course is the correct one here.  First, "'the existence of proximate cause is a question of fact for the jury,'" and 'only if it is absolutely clear that the [defendant's]

18

negligence could not have been a proximate cause [of the harm asserted by the plaintiff] is it a question of law.'" *Bradley v. Nat'l Collegiate Athletic Ass'n*, 464 F. Supp. 3d 273, 298 (D.D.C. 2020) (first quoting *McNeal v. Hi-Lo Powered Scaffolding, Inc.*, 836 F.2d 637, 644 (D.C. Cir. 1988); then *quoting Boodoo v. Cary*, 21 F.3d 1157, 1161 (D.C. Cir. 1994)). It is not clear that defendants' overserving cannot be the proximate cause of Lawrence's harm. Therefore, denying summary judgment is the right course. Unlike in *Doe*, a special relationship exists in this case. Further, Lawrence has submitted proof pertaining to defendants' notice concerning potential harm of Petersen taking advantage of her intoxicated state. Bartender Aaron Malofsky testified that "you could tell it was [Lawrence and Petersen's] first engagement together" and "[t]hey had never met." Ex. J, at 15–16. Also, Petersen appears to have bought five glasses of wine for Lawrence after she had already consumed four glasses. *See* Ex. O, at 9–10. Therefore, I will not grant summary judgment to defendants on plaintiff's negligence per se claim.

## C. Negligent Spoliation of Evidence

For defendants to receive summary judgment on Lawrence's negligent spoliation of evidence claim, they must show that Lawrence cannot prove:

> (1) existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to that action; (3) destruction of that evidence by the duty-bound defendant; (4) significant impairment in the ability to prove the potential civil action; (5) a proximate relationship between the impairment of the underlying suit and the unavailability of the destroyed evidence; (6) a significant possibility of success of the potential civil action if the evidence were available; and (7) damages adjusted for the estimated likelihood of success in the potential civil action.

*Holmes*, 710 A.2d at 854. This they cannot do.

19

First, defendants do not truly contest that a potential civil action against Petersen by Lawrence exists. *See* Mem. Op. [Dkt. #59] at 10–12. Second, defendants argue that they were under no duty to preserve evidence in Lawrence or Petersen's rooms. Defs.' Br. 23. Lawrence claims they had a duty as innkeeper to preserve evidence related to guest incidents. Pl.'s Opp'n 21. Lawrence's argument is not exactly clear, but she appears to suggest that the hotel should have called emergency services and that would have led to Petersen's room being investigated for evidence. But it is not in dispute that Lawrence did not report anything about Petersen to the Hotel or the police while in Washington, D.C. Defs.' Br. 10. Therefore, it is difficult to find that defendants were duty-bound to preserve any evidence in Petersen's room. *Channey v. Marriott* is instructive to elicit this point. *See* 2021 WL 5755154. In *Channey*, the plaintiff was a victim of sexual assault in a hotel. She asked the hotel to preserve her room, and the hotel told her that it would. *Id.* at *5. However, the hotel did not uphold its promise and the plaintiff's room was not preserved. *Id.* The Magistrate Judge's Report and Recommendation, which the Court adopted, found that a reasonable juror could conclude that the hotel had a duty to preserve that evidence. *Id.* That case presents a critical difference from Lawrence's: Lawrence did not ask the hotel to preserve or not clean any room (so the hotel made no such promise to do so), nor did they affirmatively know there was anything to preserve.

A juror could find that a hotel has a duty to preserve video surveillance. Unfortunately for Lawrence, all signs in this case point to the Hotel doing exactly that. Indeed, Lawrence does not have any viable argument concerning *destroyed* video

20

evidence, because Lawrence has not offered a scintilla of evidence that video evidence was, in fact, destroyed. Lawrence deposed the Hotel's director of loss prevention, Keenen Green, and he testified that he retrieved all footage of Lawrence available. Pl.'s Opp'n, Ex. N ("Green Dep.") [Dkt. #64-14] at 12. Regarding a potential second video camera at Mixx bar, Green testified that he recalled one or two cameras at the Mixx bar. Green Dep. 6. Loss prevention officer Angel testified that the Hotel does not have cameras to cover every seat in the bar. Pl.'s Opp'n, Ex. C [Dkt. #64-3] at 7. Therefore, defendants show no issue of fact concerning their claim that video evidence was not destroyed. *See* Green. Dep. 12 ("[W]e pulled all of that footage and determined her steps and movement for that evening."). Lawrence does not offer any evidence that other cameras captured her during her time at the Hotel, the recordings of which were not turned over, or that defendants destroyed video evidence from any cameras.

Finally, if there is any remaining doubt as to Lawrence's claim for negligent spoliation of evidence not being fit to survive summary judgment, prong four certainly eliminates it. The loss of any evidence that Lawrence suggests might have existed would not significantly impair her ability to prove a civil action against Petersen because he has admitted under oath and in detail to his sexual conduct with Lawrence and all his contact with her at the Hotel. Further, the Hotel *has* provided evidence, including video surveillance, that Lawrence could have used in a civil action. Accordingly, defendants are due summary judgment as to Count III.

### D.    Negligent Infliction of Emotional Distress

Lawrence's claim for negligent infliction of emotional distress rests on the special-

relationship-or-undertaking rule. *See Hedgepeth*, 22 A.3d at 810–11.[3] To prove a claim under the special-relationship-or-undertaking rule, Lawrence must show three things: (1) defendants had a relationship with her or undertook an obligation to her, "of a nature that necessarily implicates [her] emotional well-being"; (2) "an especially likely risk that [defendants'] negligence would cause serious emotional distress to [her]"; and (3) negligent actions or omissions of the defendant in breach of that obligation have, in fact, caused [her] serious emotional distress." *Id.*

The relationship between a guest and innkeeper can be considered a recognized special relationship that necessarily implicates the emotional well-being of the guest. *See id.* at 812–13 & n.39 (citing Dan B. Dobbs, *Undertakings and Special Relationships in Claims for Negligent Infliction of Emotional Distress*, 50 Ariz. L. Rev. 49, 54 (2008)); *Beckwith*, 82 F. Supp. 3d at 259 (finding a special relationship between a hotel and guest); *see also* Restatement (Second) of Torts § 314A(2). With a special relationship established, Lawrence must show "emotional distress caused by the defendant's breach of a duty of care that is defined in accordance with traditional precepts of negligence law." *Hedgepeth*, 22A.3d at 804. Here, Lawrence's NIED claim must meet its end. Defendants argue in their opening brief that Lawrence "only alleges that Defendants negligently inflicted emotional distress on her by their alleged failures *after* the alleged assault by Mr. Petersen." Defs.' Br. 28. Lawrence does not dispute this in her opposition. Pl.'s Opp'n 27–30. It has already been established that Lawrence cannot

---

[3] Defendants are incorrect that the zone of danger rule is the only way to make an NIED claim. *See id.* at 812 ("[T]he zone of physical danger test is not necessary to limit the number of potential claimants in all cases because the supplemental rule we announce today contains a self-limiting principle based on the nature of the defendant's relationship with, or undertaking to, the plaintiff.").

show a viable standard of care that the Hotel violated in their response to finding her in the hallway. Therefore, plaintiff's NIED claim cannot proceed past summary judgment.

### E.    Punitive Damages

For Lawrence to recover punitive damages under D.C. law, she must "prove by clear-and-convincing evidence that the defendant's tortious acts were 'accompanied by conduct and a state of mind evincing malice or its equivalent.'" *District of Columbia*, 103 A.3d at 522 (D.C. 2014) (quoting *Jackson*, 810 A.2d at 396). Showing "malice or its equivalent" requires proving: "(1) 'the defendant acted with evil motive, actual malice, deliberate violence or oppression, or with intent to injure, or in willful disregard for the rights of the plaintiff'; and (2) "the defendant's conduct itself was outrageous, grossly fraudulent, or reckless toward the safety of the plaintiff." *Id.*

Because plaintiff's other claims warrant summary judgment, I only need to consider the availability of punitive damages in reference to plaintiff's negligence per se claim. Therefore, the only conduct relevant for proving a mental state and conduct of "malice or its equivalent" is the conduct of defendants' bartender employees. Defendants claim that Lawrence provides evidence "at worst" that "the bartenders did not appreciate the amount of alcohol Lawrence had consumed, but [that] is not indicative of a malicious or criminal state of mind, let alone clear and convincing evidence of it." Defs.' Br. 40. Lawrence devotes one paragraph with no case citations to claim that defendants' bartender employees "demonstrate[d] a willful disregard for the rights of Plaintiff." Pl.'s Opp'n 43. Lawrence then argues that the bartenders' conduct to overserve her was outrageous and reckless because one bartender testified that four glasses of wine is

"plenty" when she was served "nine." Pl.'s Opp'n 43.

Lawrence concedes that there is no evidence of "evil motive, actual malice, deliberate violence or oppression, or with intent to injure," so Lawrence's only path to rebutting summary judgment is to provide evidence showing "willful disregard." *See* Pl.'s Opp'n 40–45. While there is evidence that defendants' bartender employees would have reason to know whether she, as a bar patron, was intoxicated, Lawrence has not provided any evidence that they willfully disregarded this fact or chose not to appreciate the possible consequences. On that record, defendants are due summary judgment on Lawrence's punitive damages claims.

## VI.    CONCLUSION

For the above-mentioned reasons, I **GRANT IN PART** defendants' motion for summary judgment as to Counts I, II, III, and punitive damages and **DENY IN PART** defendants' motion for summary judgment as to Count IV. An Order consistent with the above accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge